IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ROBYN ELLIOTT,

    Plaintiff,

vs.

RUSSELL W. GALBUT, individually;
CRESCENT HEIGHTS INVESTMENTS,
INC., a Florida corporation;
and CRESCENT HEIGHTS SALES, INC.,
a Florida corporation,

    Defendants.
_____/

CASE NO. 96-1698

MAGISTRATE JUDGE
TURNOFF

CIV-FERGUSON

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF WITH JURY TRIAL DEMAND

Plaintiff Robyn Elliott ("Elliott"), by and through her undersigned counsel, sues Defendants Russell W. Galbut ("Galbut"), Crescent Heights Investments, Inc. ("CHI"), and Crescent Heights Sales, Inc. ("CHS"), and alleges as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1. Elliott brings this action to recover from Defendants CHI and CHS back pay, fringe benefits, front pay, compensatory damages, punitive damages, reasonable attorney's fees and costs for unlawful sex discrimination and sexual harassment by Defendants in violation of Title VII of the Civil Rights Act of 1965, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§1981(a)(b)(3) and 1981(a)(b)(1), and in violation of the Florida Civil Rights Act of 1992, as amended, §760.01, et seq., Fla. Stat. (1994). In addition, Elliott brings this action against Defendants CHI and CHS to recover lost wages, lost benefits, compensatory damages, reasonable attorney's fees and costs for unlawful retaliation by

Burd
Downs &
Magathan   601 BRICKELL KEY DRIVE, SUITE 500, MIAMI, FLORIDA 33131 • TELEPHONE: 305 374-3100 / FAX: 305 374-3161

Defendants CHI and CHS in violation of the Florida Whistleblower Statute, §448.102, Fla. Stat. (1991). Finally, Elliott brings this action to recover compensatory and punitive damages from Defendant Galbut for intentional infliction of emotional distress against Elliott.

2. Jurisdiction of this Court is proper pursuant 28 U.S.C. §§1331, 1337, 1343, and 1345; 42 U.S.C. §2000e-5(f); and 28 U.S.C. §§2201 and 2202. This Court also has pendent jurisdiction over Elliott's common law claims and her claims brought pursuant to §§448.102, 448.103, and 760.07 , Fla. Stat.

3. Venue for this action properly lies in this Court because the unlawful actions alleged herein occurred in this District.

4. Elliott is a female natural person, being a citizen of the United States, and a citizen and resident of Broward County, Florida.

5. Defendants CHI and CHS are, and at all material times have been, Florida corporations authorized to do business in the State of Florida, and doing business in Dade County, Florida.

6. At all material times hereto, Defendants CHI and CHS were "employers" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e(b), and §760.01(7) of the Florida Civil Rights Act of 1992, in that they were businesses affecting interstate commerce that had employed 15 or more persons for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. In addition, CHI and CHS were, at all material times hereto, "employers" within the meaning of

2



§448.101(3), Fla. Stat. (1991), in that they were corporations that employed 10 or more persons.

7. At all material times hereto, Defendants CHI and CHS were "joint employers" of Elliott within the guidelines and criteria adopted by the United States Equal Employment Opportunity Commission ("EEOC").

8. At all material times hereto, Defendant Galbut was, and still is, the Managing Director, an owner, and agent of Defendants CHI and CHS. At all material times hereto, Galbut was a natural person, being a citizen of the United States and a citizen and resident of Dade County, Florida.

9. At all material times hereto, Galbut was employed by CHI and CHS, and was Elliott's direct supervisor.

10. All conditions precedent to the institution of this action have been fulfilled, waived, or otherwise discharged. In addition, Elliott has exhausted all of her administrative remedies under the applicable Federal and State statutes.

11. Between March, 1990 and approximately December 27, 1995, Elliott was employed by CHI and CHS as the administrative assistant for Galbut. Elliott learned of her discharge from CHI and CHS on or about December 27, 1995.

12. Elliott has retained the undersigned law firm to represent her in this case, and has agreed to pay the firm a reasonable fee for its services. Pursuant to 42 U.S.C. §1988, §760.35(2), Fla. Stat. (1994), and §448.104, Fla. Stat. (1991), Elliott is entitled to recover her attorney's fees and costs in

3



connection with the successful prosecution of this action.

### COUNT I - UNLAWFUL SEX DISCRIMINATION AND SEXUAL HARASSMENT BY CHI AND CHS IN VIOLATION OF TITLE VII

13. Commencing in approximately June of 1990 and continuing through December 27, 1995, Elliott was subjected to a continuous campaign of sexual discrimination, sexual harassment, and exposure to a sexually hostile work environment by Galbut, her supervisor and the agent and Managing Director of CHI and CHS. This campaign of sexual discrimination, sexual harassment, and exposure to a sexually hostile work environment included, but was not limited to, the following:

(a) In or about June, 1990, Galbut introduced Elliott to one of his male business associates, a prominent Miami attorney who had provided representation to the Defendant companies. Galbut instructed Elliott to give the business associate a tour of the Alexander Hotel, one of the properties owned by CHI. Galbut also instructed Elliott to give the business associate "anything he wanted." During the tour of the property, the business associate asked Elliott to show him a typical suite. Upon entering the suite, the business associate informed Elliott that Galbut had promised him that Elliott would provide him with oral sex. Elliott informed the business associate that there was clearly a misunderstanding and told him that they had to leave the suite. Elliott then confronted Galbut regarding the incident. In response, Galbut laughed and informed Elliott that it would not happen again.

(b) In November, 1990, Galbut introduced Elliott to another

4



prominent male attorney friend of his who was staying in the Alexander Hotel with his wife for the Thanksgiving holiday. Galbut introduced Elliott to his friend in the lobby of the Alexander Hotel, instructed Elliott to be nice to his friend, and left Elliott alone with his friend. Galbut's friend then proceeded to make unwelcome sexual overtures to Elliott, apparently because he had been informed by Galbut that Elliott would reciprocate. Elliott, appalled at the friend's gestures, excused herself. The following day, Elliott confronted Galbut regarding the incident and told him to stop telling his friends that Elliott would provide them with sexual favors. In response, Galbut apologized and said the incident would not happen again.

(c) Between 1990 and 1995, Galbut continuously required Elliott to make arrangements for Galbut and his friends to use complimentary suites at hotels owned by Defendant CHI. Galbut instructed Elliott to use fictitious names to register him and his friends and that he and his friends would use the suites approximately one hour at a time. Elliott learned that the suites were to be made available to Galbut and his friends to permit them to engage in sexual relations with various females.

(d) Between 1990 and 1995, Galbut, a married man, engaged in a number of extramarital affairs. Throughout this time, Galbut, on numerous occasions, would describe to Elliott, using sexually explicit language, the various sexual relations and sexual practices he engaged in, or would like to engage in, with his female companions. These discussions that Galbut had with Elliott,

5



Burd Downs & Magathan    601 BRICKELL KEY DRIVE, SUITE 500, MIAMI, FLORIDA 33131 • TELEPHONE: 305 374-3100 / FAX: 305 374-3161

which were unwelcome to Elliott, included Galbut having Elliott sit in on a sexually explicit phone conversation between Galbut and another woman; Galbut informing Elliott that he had had sexual intercourse with another female on top of the desk in his office; Galbut informing Elliott that he had had sexual relations with more than five different women; Galbut describing to Elliott the number of orgasms he and one of his female companions had; Galbut showing Elliott sexually suggestive photographs taken of females at a party at Galbut's penthouse apartment; and Galbut informing Elliott that, on one occasion, he had had sexual intercourse with another female, but would not do it again because she was "too kinky" for him.

(e) Between 1990 and 1995, Galbut continuously required Elliott to make arrangements for the sending of expensive gifts and flower arrangements to his various female friends. Galbut also required Elliott to make arrangements for him to meet with his female friends at restaurants and hotel rooms in the company-owned hotels. Galbut further required Elliott to make travel arrangements and airplane reservations for various Galbut female companions, as well as for Galbut's wife. In connection with these arrangements, Galbut admonished Elliott to make sure that Galbut's wife never crossed paths with Galbut's female companions at any of the airports or hotels.

(f) While Elliott was employed as Galbut's administrative assistant, Galbut required Elliott to keep prophylactics in her desk drawer for Galbut's use with various female friends. Galbut instructed Elliott that, if Galbut's wife were to show up and ask



about the prophylactics, Elliott was to inform her that they belonged to her, not to Galbut. In addition, on one occasion, a box arrived at Galbut's office which contained various sexual devices. Galbut explained to Elliott that the contents of the box were a gift for one of his female companions, a Miami Beach attorney with whom Galbut was having an intimate relationship. Galbut instructed Elliott that if Galbut's wife found any of the items in the box, Elliott was to say that the items belonged to Elliott, not to Galbut.

(g) In December, 1994, Galbut required that Elliott meet with one of his female friends, the Miami Beach attorney, to find out what she wanted for Christmas. The female friend told Elliott that she wanted a single strand of pearls. Galbut purchased the pearls for his female friend, and also purchased a double strand of pearls for his wife. Galbut then instructed Elliott to wrap the gifts and told her to make sure that the boxes did not get mixed up.

(h) In or about February, 1995, Galbut drafted a contract between himself and one of his female companions, the Miami Beach attorney, regarding their relationship and what his responsibilities would be if a baby was conceived by them. He told Elliott to review the contract and to add whatever she felt was appropriate. Despite Elliott's protestations, Galbut insisted that Elliott assist him with preparation of the contract.

(i) In September, 1995, on two different occasions while Elliott was discussing business with Galbut, Galbut went into his private bathroom adjacent to his office and did not close the door



Burd Downs & Magathan   601 BRICKELL KEY DRIVE, SUITE 500, MIAMI, FLORIDA 33131 • TELEPHONE: 305 374-3100 / FAX: 305 374-3161

while he was urinating, thereby exposing himself to Elliott. On both occasions, Elliott walked out of the office.

(j) On December 18, 1995, Galbut demanded Elliott resign because, on the preceding Friday, December 15, 1995, Elliott had refused to provide companionship to a brother of one of Galbut's female friends at Galbut's penthouse apartment in the Alexander Hotel. Elliott refused to resign, and informed Galbut that she would contact an attorney to defend her rights with regard to Galbut's past sexual harassment and other illegal conduct. Galbut thereupon tore up Elliott's bonus check, which Galbut had promised her, and attempted to have Elliott execute a waiver of her legal rights in exchange for a payment of $5,000 to $10,000. Elliott refused to sign the waiver documents, and was discharged from her employment on or about December 27, 1995.

14. Defendants CHI and CHS, through Galbut, their Managing Director and Elliott's immediate supervisor, engaged in the above-described unlawful sex discrimination, sexual harassment and exposure of Elliott to a sexually hostile environment in violation of Title VII, 42 U.S.C. §2000e-2(a)(1)(2). CHI and CHS, through Galbut, engaged in the unlawful conduct willfully, wantonly, and in reckless disregard of Elliott's rights.

15. As a direct and proximate result of the discriminatory conduct of CHI and CHS, through their agent Galbut, Elliott has suffered substantial losses in the form of back pay, lost benefits, embarrassment, humiliation, compensatory damages, and severe emotional distress.

8



16. Elliott's suffering is a continuing and immediate irreparable injury for which she has no adequate remedy at law. Because of the unusually egregious conduct of CHI and CHS, committed through their agent Galbut, and the hostile nature of the work environment created thereby, reinstatement of Elliott within CHI and CHS would be an inadequate remedy at law. Elliott, therefore, is entitled to receive front pay for a period of time to be determined by this Court.

WHEREFORE, Elliott prays that this Court:

(a) Declare the conduct engaged in by CHI and CHS as in violation of Elliott's rights under Title VII of the Civil Rights Act of 1964, as amended;

(b) Award Elliott front pay until she receives comparable new employment or until such time as the Court deems just and proper;

(c) Award Elliott back pay, lost fringe benefits and damages for her humiliation, embarrassment and emotional distress;

(d) Award Elliott all due pre-judgment interest;

(e) Award Elliott compensatory damages as provided for by law;

(f) Award Elliott punitive damages for Defendants' willful and reckless misconduct;

(g) Award Elliott reasonable attorney's fees and costs as provided by law and the statutes described hereinabove; and

(h) Grant such other relief as this Court deems just and proper.



Burd Downs & Magathan   601 BRICKELL KEY DRIVE, SUITE 500, MIAMI, FLORIDA 33131 • TELEPHONE: 305 374-3100 / FAX: 305 374-3161

## COUNT II - UNLAWFUL SEX DISCRIMINATION AND SEXUAL HARASSMENT BY CHI AND CHS IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

17.  Elliott realleges the allegations of paragraphs 13, 15 and 16 as if set forth fully herein.

18.  The actions of CHI and CHS as described in paragraph 13 above constitute unlawful sex discrimination and sexual harassment in violation of the Florida Civil Rights Act of 1992, §760.10(1), Fla. Stat. (1994), which makes it unlawful "to discharge or fail or refuse to hire an individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's sex. . . ."

19.  CHI and CHS, through Galbut, engaged in their unlawful conduct willfully, wantonly, and with reckless disregard of Elliott's rights under the Florida Civil Rights Act of 1992, as amended.

WHEREFORE, Elliott prays that this Court:

(a)  Declare the conduct engaged in by CHI and CHS as in violation of Elliott's rights;

(b)  Award Elliott front pay until she receives comparable new employment or until such time as the Court deems just and proper;

(c)  Award Elliott back pay, lost fringe benefits and damages for embarrassment, humiliation and mental anguish;

(d)  Award Elliott all due pre-judgment interest;

(e)  Award Elliott compensatory damages as provided for by law;

(f)  Award Elliott punitive damages as provided for by law for

10



the willful and reckless misconduct of CHI and CHS;

(g) Award Elliott reasonable attorney's fees and costs as provided by law and the statutes described hereinabove; and

(h) Grant such other relief as this Court deems just and proper.

### COUNT III - UNLAWFUL RETALIATION BY CHI AND CHS IN VIOLATION OF FLORIDA STATUTE §448.102

20. Section 448.102(3), Fla. Stat. (1991), provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Section 448.101(4), Fla. Stat. (1994), provides that the term "law, rule, or regulation" for purposes of §448.102 "includes any statute or ordinance or any rule or regulation adopted pursuant to any federal, state or local statute or ordinance applicable to the employer and pertaining to the business."

21. Between 1990 and 1995, CHI and CHS, through their agent Galbut, attempted to have or had Elliott engage in the following illegal activities, among others:

(a) In the summer of 1995, Galbut requested Elliott, if she were subpoenaed, to provide perjured testimony in connection with private civil litigation and an investigation by the Federal Deposit Insurance Corporation involving Capital Bancorp, a Miami-based bank of which Galbut is a shareholder and member of the board of directors. This perjured testimony would have included, but not

11



Burd Downs & Magathan    601 BRICKELL KEY DRIVE, SUITE 500, MIAMI, FLORIDA 33131 • TELEPHONE: 305 374-3100 / FAX: 305 374-3161

have been limited to, the fact that certain shares of stock of Capital BanCorp were being fraudulently held in trust for Galbut under the names of certain other third parties. Elliott refused to do so.

(b) In or about May of 1995, Galbut requested Elliott to assist the law firm hired by the Capital Bancorp board of directors to conduct a purportedly "independent" investigation into the Holtz family's alleged wrongdoing in Capital Bancorp. Galbut made this request even though he was a shareholder and a member of the board of directors of Capital Bancorp and had been named as a party in a lawsuit against the bank by dissident shareholders. Galbut promised Elliott a large bonus if she were to become involved in the "independent" investigation and provide him with details of any findings of wrongdoing before they were officially reported. Elliott refused to become involved and refused the bonus.

(c) In late 1992, following Hurricane Andrew, Galbut requested Elliott to assist in the preparation of untruthful and inflated insurance schedules to present to insurance companies regarding the CHI hotel properties and Galbut's personal residence. Elliott refused to work on the preparation of such schedules.

(d) Between 1993 and 1995, Galbut required Elliott, as well as other employees of the company, to make campaign contributions to various Dade County and Miami Beach political candidates. Galbut informed Elliott and the other employees that they would be reimbursed by CHI and CHS for the contributions. Elliott later learned that the contributions were illegal.

12



(e) In or about July and August of 1995, Galbut instructed Elliott to sign certain papers with SunTrust Bank for purposes of opening a foreign bank account in the name of an offshore company known as "Perdido". Galbut instructed Elliott to sign the papers as the managing director of the offshore company. At the time, Galbut explained to Elliott that the purpose of the company was to hold his money, although the money would appear to be held in another person's name. When Elliott discovered the purpose of the offshore company, she refused to become further involved in the situation.

(f) Between 1993 and 1995, Galbut required Elliott to assist him in procuring documents that resulted in substantial charges to the Defendant companies for improvements, renovations and restorations performed on Galbut's personal properties. These fabricated charges resulted in substantial illegal federal tax savings to Galbut, personally.

(g) At various times during Elliott's employment, Galbut required Elliott to notarize signatures of individuals she did not know and who did not sign in her presence. Elliott refused to comply with Galbut's requests.

(h) In mid-1995, Galbut requested Elliott to provide him with assistance in a scheme to divert funds outside the United States through certain Israeli bank accounts to avoid paying United States taxes. Elliott refused to do so.

22. On December 18, 1995, when Galbut requested Elliott's resignation and tore up her bonus check, Elliott refused to resign

13



Burd
Downs &
Magathan    601 BRICKELL KEY DRIVE, SUITE 500, MIAMI, FLORIDA 33131 • TELEPHONE: 305 374-3100 / FAX: 305 374-3161

and informed Galbut that she would contact an attorney to defend her rights, and would disclose both Galbut's sexual harassment and the illegal activities in which he was engaged. Galbut then requested Elliott to execute a waiver of her rights against him, in exchange for a $5,000 to $10,000 payment. Elliott refused to execute the waiver documents and to accept Galbut's money. Elliott subsequently learned she had been terminated from her employment on or about December 27, 1995.

23. CHI and CHS terminated Elliott from her employment in part because she objected to or refused to participate in the unlawful activity and practices of Galbut, her supervisor and CHI's Managing Director. CHI and CHS' termination of Elliott, therefore, constitutes unlawful retaliatory personnel action against Elliott in violation of §448.102(3), Fla. Stat. (1991).

24. As a direct and proximate result of CHI and CHS' unlawful retaliatory personnel action against Elliott taken through CHI and CHS' agent Galbut, Elliott has suffered substantial losses in the form of back pay, lost fringe benefits, and other compensatory damages, including humiliation, embarrassment, and severe emotional distress.

WHEREFORE, Elliott prays that this Court:

(a) Declare the conduct engaged in by CHI and CHS to in violation of Elliott's rights under §448.102(3), Fla. Stat. (1991);

(b) Award Elliott back pay, lost fringe benefits, and compensatory damages;

14


Burd Downs & Magathan   601 BRICKELL KEY DRIVE, SUITE 500, MIAMI, FLORIDA 33131 • TELEPHONE: 305 374-3100 / FAX: 305 374-3161

(c) Award Elliott all due pre-judgment interest;

(d) Award Elliott reasonable attorney's fees and costs pursuant to §448.104, Fla. Stat. (1991); and

(e) Grant such other relief as this Court deems just and proper.

## COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST GALBUT

25. Elliott realleges paragraphs 13, 15, 21 and 22 as if set forth fully herein.

26. In addition to the conduct alleged in paragraphs 13 and 21 above, Galbut engaged in additional conduct which, when viewed together the conduct alleged in paragraphs 13 and 21, was of such an outrageous and reprehensible nature as to cause Elliott severe emotional distress. Such additional conduct included the following:

(a) Making false accusations regarding Elliott's reasons for being terminated, including accusations that Elliott had certain mental and psychological defects.

(b) Unreasonably delaying payment of Elliott's last paycheck in an effort to coerce Elliott to execute a waiver of legal rights against Galbut and the Defendant companies.

(c) When Galbut learned that Elliott had hired an attorney to bring the instant lawsuit against him, Galbut filed a frivolous charge of extortion against Elliott in an effort to prevent her from pursuing her rights under Title VII, the Florida Civil Rights Statute, and the Florida Whistleblower Statute. Galbut, knowing that Elliott was already receiving medical attention for anxiety

15



601 BRICKELL KEY DRIVE, SUITE 500, MIAMI, FLORIDA 33131 • TELEPHONE: 305 374-3100 / FAX: 305 374-3161

and severe emotional distress resulting from his earlier actions, filed the frivolous extortion charge intentionally to prevent Elliott from exercising her legal rights and to further increase her already deep emotional and psychological trauma.

27.  Galbut's conduct as described in paragraphs 13, 21, and 26 above, was done intentionally, maliciously, wantonly, willfully, with reckless disregard of Elliott's rights, and was so outrageous and beyond the bounds of decency as to constitute the intentional infliction of emotional distress against Elliott.

28.  As a proximate and direct result of Galbut's intentional infliction of emotional distress against Elliott in connection with the above-described events, Elliott has suffered damages in the form of embarrassment, humiliation, severe emotional distress, and mental and physical pain and suffering.

WHEREFORE, Elliott prays that this Court:

(a)  Award Elliott compensatory damages;

(b)  Award Elliott punitive damages in excess of $1,000,000;

(c)  Award Elliott all due pre-judgment interest; and

(d)  Grant Elliott such other relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Elliott demands trial by jury of all issues so triable.


Burd Downs & Magathan   601 BRICKELL KEY DRIVE, SUITE 500, MIAMI, FLORIDA 33131 • TELEPHONE: 305 374-3100 / FAX: 305 374-3161

DATED this _19th_ day of June, 1996.

                                               Respectfully submitted,

                                               BURD DOWNS & MAGATHAN
                                               Attorneys for Plaintiff
                                               601 Brickell Key Drive
                                               Suite 500
                                               Miami, Florida 33131
                                               Tel: (305) 374-3100

                                               By: _____
                                                   Roderick V. Hannah
                                                   Florida Bar No. 435384

lit\elliott\complaint


Burd Downs & Magathan    601 BRICKELL KEY DRIVE, SUITE 500, MIAMI, FLORIDA 33131 • TELEPHONE: 305 374-3100 / FAX: 305 374-3161

# CIVIL COVER SHEET  96-1698

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
ROBYN ELLIOTT

**MAGISTRATE JUDGE TURNOFF**

## DEFENDANTS  CIV-FERGUSON
RUSSELL W. GALBUT, individually; CRESCENT HEIGHTS INVESTMENTS, INC., a Florida corporation; and CRESCENT HEIGHTS SALES, INC., a Florida corporation,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __DADE__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __DADE__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Roderick V. Hannah, Esq.
601 Brickell Key Dr., Suite 500
Miami, FL 33131 (305) 374-3100

ATTORNEYS (IF KNOWN)
Unknown

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
(DADE,) MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

A-DADE 96cv1698-WDF/WCT

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

IVa. __7__ days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury—Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury—Product Liability | ☐ 630 Liquor Laws | A PROPERTY RIGHTS | B ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | A SOCIAL SECURITY | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / B ☐ 371 Truth in Lending | A LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  | B ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
|  | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS |  | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | A FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| B ☐ 220 Foreclosure | ☒ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | B ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 890 Other Statutory Actions *A or B |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other |  |  |  |
| ☐ 290 All Other Real Property |  | ☐ 550 Civil Rights *A or B |  |  |  |

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Refiled
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23
DEMAND $
Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 6/19/96
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY: Receipt No. 664069   Amount: 120.00
Date Paid: 06/19/96  M/ifp: _____

UNITED STATES DISTRICT COURT
S/F I-2
REV. 6/90